Argued and submitted February 7, affirmed June 5, 2003

## JoAnn WILKINSON,
*Petitioner,*

*v.*

## PUBLIC EMPLOYEES RETIREMENT BOARD,
*Respondent.*

## 00-452; A117301

69 P3d 1266

Andrew P. Ositis argued the cause and filed the brief for petitioner.

Jas. Jeffrey Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

The Public Employees Retirement Board (PERB) denied JoAnn Wilkinson's application for death benefits from her deceased husband's Public Employees Retirement System (PERS) account, concluding that the benefits belonged instead to his ex-wife. Ms. Wilkinson (petitioner) seeks judicial review. We affirm.

The facts are not in dispute. Alan Wilkinson (decedent) began working for the state in 1972. At the time, he was married to ex-wife, and in 1973 he designated her as the beneficiary of his PERS account. In 1980, decedent quit working for the state and withdrew all of the funds in his PERS account. In 1985, decedent's marriage to ex-wife was dissolved. In April 1988, he returned to state employment and later that year married petitioner. When he reentered state employment, he once again became a member of PERS, but he did not declare a beneficiary.

In 1994, PERS sent decedent a statement informing him, "In case of death your records do not show a valid beneficiary. Please complete a beneficiary designation form and return to us as soon as possible." That information was not entirely accurate. Although he had not named a beneficiary on resuming state employment, his earlier designation of ex-wife remained in effect by virtue of ORS 238.390(1). That statute provides that "withdrawal from the fund * * * shall not invalidate a prior designation of beneficiary in the event a member returns to covered employment * * *." In addition to the misinformation, the same PERS statement also included the following warning:

> "IMPORTANT: PERS makes every effort to present accurate data on this report. We rely on information from your employer. If discrepancies exist, the statutes will govern. If this statement does not agree with your records, address your inquiries to the PERS Membership/Employer Relations section."[1]

---

[1] PERS sent decedent a similar statement after 1999, but he died before receiving it.

Decedent worked for the state until 1995. When he left, he did not withdraw the funds from his PERS account. In 1999, he sent a letter to PERS requesting a "change in beneficiary" form but, for one reason or another, PERS never received the completed form. Thus, when decedent died in 2000, his only designated beneficiary was ex-wife. When petitioner requested that she be declared the beneficiary, PERS refused. Petitioner appealed to PERB, which affirmed, maintaining that it was bound by decedent's beneficiary designation and ORS 238.390(1).

Before this court, petitioner repeats the two arguments she made to PERB. First, she maintains that statutes in ORS chapter 107 (Dissolution, Annulment and Separation) operate to cancel the designation of ex-wife as decedent's beneficiary and make the PERS account marital property to which petitioner is entitled. Second, she contends that PERB is estopped from denying her status as beneficiary because PERS advised decedent that he had no valid beneficiary, that advice amounted to telling him that the money in his account would go to petitioner as his current wife, and he relied on that advice in not taking action to make petitioner his designated beneficiary. Neither of petitioner's arguments has merit.

The Public Employees Retirement Fund is a trust that must be administered in accordance with its governing statutes. ORS 238.660; OAR 459-005-0010(2). When a member of PERS dies before retiring, as decedent did in the present case,[2] "the fund shall be paid to the beneficiaries designated by the member." ORS 238.390(1). As noted above, although decedent withdrew the funds in his account when he left state employment in 1980, his resumption of state employment did not invalidate his earlier designation of ex-wife as his beneficiary. *Id.* Therefore, when decedent returned to "covered employment" in 1988, his designation of

---

[2] Decedent had not retired as a member of PERS because he was not 55 years old nor had he completed 30 years of service. ORS 238.280(1), (2)(b). In addition, the death notification that petitioner submitted to PERS contained a box marked "Active" and not "Retired."

ex-wife as his beneficiary was still valid. Neither the withdrawal nor the 1985 divorce had the effect of invalidating decedent's beneficiary designation.

█ Petitioner argues that two statutes have an effect on this case: ORS 107.105(1)(f) and ORS 107.115. The first provides, in part:

"(1) Whenever the court grants a decree of marital annulment, dissolution or separation, it may further decree as follows:

"* * * * *

"(f) For the division or other disposition between the parties of the real or personal property * * * as may be just and proper in all of the circumstances. A retirement plan or pension or an interest therein shall be considered as property."

Petitioner contends that the last sentence quoted above entitles her to the PERS account in this case because the account is marital property. It is clear from the text that the statute applies only "[w]henever the court grants a decree of marital annulment, dissolution or separation." In such a case, a retirement plan or pension could be considered marital property. That is not the situation in this case. Here, we are dealing solely with the beneficiary designation for a PERS account. The statute has no relevance whatsoever to the situation in this case.

Petitioner also relies on ORS 107.115(1), which provides:

"A decree of annulment or dissolution of a marriage restores the parties thereto to the status of unmarried persons, unless a party is married to another person. * * * The decree shall revoke a will pursuant to the provisions of ORS 112.315."

ORS 112.315, in turn, provides:

"Unless a will evidences a different intent of the testator, the divorce or annulment of the marriage of the testator after the execution of the will revokes all provisions in the will in favor of the former spouse of the testator and any provision therein naming the former spouse as executor * * *."

Those statutes operate to revoke, on dissolution, certain provisions of a will favoring the former spouse. A PERS account is not a will, and petitioner does not argue that it is. The statutes cited by petitioner indicate, at most, that the existing statutory scheme regarding PERS beneficiaries and former spouses manifests a policy that is different from the policy in other statutes. That fact cannot bear on the meaning of the PERS statute, which is not ambiguous.

Petitioner also argues that decedent relied on the forms from PERS that stated that he had no valid beneficiary on file and that therefore PERS is estopped from denying that he had such a beneficiary. There are numerous problems with that argument.

 The theory of equitable estoppel

"requires proof of a false representation, (1) of which the other party was ignorant, (2) made with the knowledge of the facts, (3) made with the intention that it would induce action by the other party, and (4) that induced the other party to act upon it."

*Keppinger v. Hanson Crushing, Inc.*, 161 Or App 424, 428, 983 P2d 1084 (1999) (citation omitted). In addition, to "establish estoppel against a state agency, a party must have relied on the agency's representations and the party's reliance must have been reasonable." *State ex rel SOSCF v. Dennis*, 173 Or App 604, 611, 25 P3d 341, *rev den*, 332 Or 558 (2001) (citing *Dept. of Transportation v. Hewett Professional Group*, 321 Or 118, 126, 895 P2d 755 (1995)).

██ ██ Assuming without deciding that petitioner could claim reliance on the representation made to decedent, it is clear that the agency did not intend to induce decedent to act, nor was its form so ambiguous that a reasonable person would have relied on it. *Swift & McCormick Metal Processors v. Durbin*, 117 Or App 605, 608-09, 845 P2d 931 (1993). The 1994 statement on which decedent allegedly relied warned that

"PERS makes every effort to present accurate data on this report. We rely on information from your employer. If discrepancies exist, the statutes will govern. If this statement

does not agree with your records, address your inquiries to the PERS Membership/Employer Relations section."

Further, decedent returned to state employment in 1988, and the PERS handbook at that time contained the following information:

"Review your designation with PERS if your original beneficiary dies or if you marry, divorce, or change your mind. Under the law, your PERS death benefits must be paid to whomever is currently named in your PERS records.

"New Designation of Beneficiary forms are available from your employer. Mail your completed form directly to PERS; changes do not become effective until a form is received and accepted by PERS."

Furthermore, to establish reasonable reliance, petitioner must show that the representations made by the state agency were within its lawful power to make. *Wiggins v. Barrett & Associates, Inc.*, 295 Or 679, 697, 669 P2d 1132 (1983). Because PERS must distribute the fund in compliance with the statutes, it could not make a representation that the funds would be distributed to someone other than the named beneficiary. Finally, the fact that decedent actually requested a change in beneficiary form indicates that he did not, in fact, rely on any misinformation in his 1994 statement.

At some time in the future, the Legislative Assembly may decide that, as a matter of policy, a PERS member's designation of a spouse as beneficiary should be automatically revoked on dissolution of the member's marriage. Until a statute implementing that policy is enacted, however, we must apply the law as written.

Affirmed.